# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
Filed: July 3, 2018

* * * * * * * * * * * * *
MARIAH VAN VESSEM, *
*
Petitioner, *
*
v. *
*
SECRETARY OF HEALTH *
AND HUMAN SERVICES, *
*
Respondent. *
*
* * * * * * * * * * * * *

No. 11-132V
Special Master Sanders

Attorneys' Fees and Costs; Administrative Work; Excessive Billing; Duplicative Billing; Reduced Petitioner's Costs; Unrelated Costs; Lack of Receipts

Mark T. Sadaka, Mark T. Sadaka, LLC, Englewood, NJ, for Petitioner.
Debra A. Filteau Begley, United States Department of Justice, Washington, DC, for Respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS**[1]

On March 2, 2011, Mariah Van Vessem ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300AA-10 to -34 (the "Vaccine Act" or "Program"). She alleged that as a result of the human papillomavirus ("HPV"), tetanus-diphtheria-acellular pertussis, and/or meningococcal vaccines administered on March 4, 2008, and/or her second HPV vaccine administered on August 4, 2008, she developed Hodgkin's Lymphoma. *See* Stipulation for Award at ¶¶ 1-4, ECF No. 147. Petitioner further alleged that she experienced residual effects of her injury for more than six months. *Id.* at ¶ 4.

On March 7, 2011, this case was assigned to Special Master Campbell-Smith. Over the next year and a half, Petitioner filed outstanding medical records requested by Respondent. *See*

[1] This decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3578, codified as amended, 42 U.S.C. 300aa-10 *et seq.* (2012).

ECF Nos. 6-30. Respondent filed his Rule 4 Report on November 5, 2012. ECF No. 31. This case was reassigned to Special Master Hamilton-Fieldman on March 4, 2013 and then again to Special Master Gowen on June 5, 2014. ECF Nos. 33, 50.

Petitioner filed expert reports authored by Dr. Yehuda Shoenfeld on June 19, 2014, December 4, 2014, and October 16, 2015. ECF Nos. 51, 62, 64, 78. Respondent filed individual expert reports authored by Dr. Edward Cetaruk and Dr. J. Lindsay Whitton on both July 24, 2014 and April 17, 2015. ECF Nos. 54-55, 69. Respondent also filed expert reports authored by Dr. Kenneth McClain on July 24, 2014 and April 17, 2015, and December 7, 2015. ECF Nos. 53, 69, 86.

An entitlement hearing was originally scheduled for January 11-13, 2016. ECF No. 70. Due to an issue involving Petitioner's expert, the hearing was rescheduled for June 27, 2017. ECF Nos. 94, 109. Thereafter, Petitioner filed an additional expert report authored by Dr. Shoenfeld on January 19, 2016. ECF No. 98. Respondent filed an additional expert report authored by Dr. McClain on March 22, 2016. ECF No. 103.

On May 16, 2017, this case was reassigned to the undersigned. ECF No. 123. Respondent filed an additional expert report authored by Dr. McClain on June 12, 2017. ECF No. 137.

On June 27, 2017, the undersigned held an entitlement hearing at the Office of Special Masters in Washington, D.C. *See* Transcript, ECF No. 145. Petitioner and Petitioner's mother testified as witnesses, followed by a lunch recess. *Id.* at 4-105. At the close of the lunch recess, the parties informed the Court that they had reached a tentative settlement. *Id.* at 106. The parties then requested that the undersigned issue a 15-week Stipulation Order, and the undersigned issued said order on the same date. *Id.*; ECF No. 141.

On October 26, 2017, the parties filed a stipulation in which they stated that a decision should be entered awarding $25,000.00 to Petitioner. ECF No. 147. The undersigned issued a decision consistent with the stipulation on October 27, 2017. ECF No. 148. Judgment entered on November 28, 2017. ECF No. 150.

On May 18, 2018, Petitioner filed a Motion for Attorneys' Fees and Costs and requested $113,938.25[3] plus an additional $781.76 for Petitioner's costs. Pet'r Mot. at 2, ECF No. 153. Respondent filed a response on May 30, 2018. Resp't's Resp., ECF No. 154. In his response, Respondent indicated that "[t]o the extent the special master is treating [P]etitioner's request for attorneys' fees and costs as a motion that requires a response from [R]espondent . . . Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id.* at 2. Respondent recommended that the undersigned "exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 3. Petitioner filed a reply on May 31, 2018. ECF No. 155. In her reply, Petitioner noted that "one of Petitioner's receipts for food included alcoholic beverages" and withdrew the request for alcohol costs documented by that receipt, $57.20. *Id.* That withdrawal reduced Petitioner's request for costs to $724.56. *Id.*

[3] The request for attorneys' fees totaled $66,332.74, while the request for attorneys' costs totaled $47,605.51. Mot. Ex. A at 38, 40, ECF No. 153-1.

On June 18, 2018, the undersigned ordered Petitioner to file additional receipts to support her Motion. ECF No. 156. That same day, Petitioner filed several of the requested receipts. Pet'r Ex. 108, ECF No. 157. She also filed a status report explaining why she could not provide the receipt for a $46.36 mailing fee. ECF No. 158. Additionally, Petitioner withdrew the cumulative $489.55 for Petitioner's counsel's food charges, stating that counsel could not provide the requested itemized receipts. *Id.* Finally, Petitioner modified the requested cost for Petitioner's counsel's hotel to total $1,186.23, which is $72.75 higher than the original amount requested for counsel's hotel stay. *Id.* Therefore, Petitioner now requests $113,521.45 for attorneys' fees and costs, and an additional $724.56 for Petitioner's costs.

This matter is now ripe for consideration.

## I.     Attorneys' Fees

The Vaccine Act permits an award of reasonable attorneys' fees. 42 U.S.C. § 300aa-15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees under the Vaccine Act. *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial fee award calculation based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of HHS*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that specify the work done and the amount of hours spent on said work. *See Savin v. Sec'y of HHS*, 85 Fed. Cl. 313, 316-18 (2008).

### a.     Hourly Rates

Forum rates are used in the lodestar formula, except when the rates in an attorney's local area are significantly lower than forum rates. *Avera*, 515 F.3d at 1348-49. As the Federal Circuit has recognized, the forum in Vaccine Act cases will always be Washington, D.C. because special masters operate as "extension[s] of the United States Court of Federal Claims." *Id.* at 1353. In a 2015 decision, Special Master Gowen determined the reasonable Washington, D.C. forum rate ranges for attorneys with varying years of experience. *McCulloch v. Sec'y of HHS*, No. 09-293V, 2015 U.S. Claims LEXIS 1227, at *25-26 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *mot. for recons. denied*, 2015 U.S. Claims LEXIS 1365 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). When deciding if a requested rate is reasonable, special masters may consider an attorney's overall legal experience and his experience in the Vaccine Program, as well as the quality of the work performed. *Id.* at *17. The *McCulloch* rates have been updated for subsequent years, and are accessible on the Court's website at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.

**i. Attorney Hourly Rate**

Mr. Sadaka has been a member of the bar of the United States Court of Federal Claims since June 10, 2005. Pet'r Mot. at 6, ECF No. 153.[4] Furthermore, he has been counsel of the record for "over 180 cases" in the Vaccine Program. *Id.* at 3; *see generally Felten v. Sec'y of HHS*, No. 15-563V, 2018 U.S. Claims LEXIS 650 (Fed. Cl. Spec. Mstr. May 10, 2018); *Kelsey v. Sec'y of HHS*, No. 09-553V, 2010 U.S. Claims LEXIS 138 (Fed. Cl. Spec. Mstr. Mar. 22, 2010).

Mr. Sadaka began work in this case on August 11, 2010 and continued to bill hours through the beginning of 2018. *See* Mot. Ex. A, ECF No. 153-1. Petitioner requests $324.58 per hour for work performed by Mr. Sadaka in 2010 and 2011. Pet'r Mot. at 2, ECF No. 153. Petitioner requests $337.05 per hour for work performed by Mr. Sadaka in 2012 and 2013. *Id.* Petitioner requests $350.00 per hour for work performed by Mr. Sadaka in 2014 and 2015. *Id.* Petitioner requests $362.95 per hour for work performed by Mr. Sadaka in 2016. *Id.* Petitioner requests $376.38 per hour for work performed by Mr. Sadaka in 2017. *Id.* Petitioner requests $404.19 per hour for work performed in 2018. *Id.*

Until June 2016, Mr. Sadaka was an attorney with less than eleven years of experience in practice.[5] The undersigned finds that the requested rates for 2010 through 2017 are reasonable for work performed by Mr. Sadaka given his considerable experience in the Vaccine Program. The undersigned awards Petitioner the requested hourly rates between 2010 and 2017. However, the undersigned will not award Petitioner for work performed by Mr. Sadaka in 2018, which will be discussed further below.[6]

**ii. Paralegal Hourly Rate**

In addition to Mr. Sakdaka, five paralegals worked on this case on behalf of Petitioner: Ms. Diana-Lynne Hsu, Ms. Keri Congiusti, Ms. Latashia Vauss, Ms. Melina Fotiou, and Ms. Michele Curry. *See* ECF No. 153. Ms. Hsu graduated with a Bachelor of Arts in Biology/Biological Sciences, and prior to joining Sadaka Associates, Ms. Hsu worked as a legal assistant. *Id.* at 6. Ms. Congiusti is a nursing school graduate and worked as a paralegal in 2010, before joining Sadaka Associates in 2011. *Id.* Prior to receiving her paralegal certificate in 2014, Ms. Vauss worked as a legal assistant intern. *Id.* She is also a notary and member of the Paralegal Association of New Jersey. *Id.* Ms. Fotiou worked as a junior advocate and writer for Binder & Binder, where she reviewed medical records, wrote briefs and appeals, and represented individuals for social

---

[4] Petitioner's Motion and the "Certification in Support" of that motion were filed as one document. ECF No. 153. For ease of reference, the undersigned will refer to the ECF page numbers of ECF No. 153 when citing to both documents.

[5] Mr. Sadaka has only provided the Court information about his Court of Federal Claims bar membership. *See* Pet'r Mot. at 6, ECF No. 153.

[6] The undersigned does not address the reasonableness of Petitioner's requested rate for work performed by Mr. Sadaka in 2018, but notes that the requested rate exceeds the forum hourly rate range applicable to attorneys with his experience.

security hearings for three years. *Id.* at 7. Ms. Fotiou has been a certified non-attorney representative for the social security services administration since June 2015. *Id.* Finally, Ms. Curry has a Graduate Certificate in Judicial Administration, and has over ten years of experience within the Orange County Superior Court, where she held various positions. *Id.*

For paralegal work performed in 2010, Petitioner requested $118.00 per hour. Pet'r Mot. at 2, ECF No. 153. For paralegal work performed in 2011, Petitioner requested $120.56 per hour. *Id.* For paralegal work performed in 2012, Petitioner requested $125.19 per hour. *Id.* For paralegal work performed in 2013, Petitioner requested $130.01 per hour. *Id.* For paralegal work performed in 2014 and 2015, Petitioner requested $135.00 per hour. *Id.* For paralegal work performed in 2016, Petitioner requested $140.00 per hour. *Id.* For paralegal work performed in 2017, Petitioner requested $145.17 per hour. *Id.* For paralegal work performed in 2018, Petitioner requested $150.55 per hour.

The undersigned finds the requested paralegal rates for work between 2010 and 2018 reasonable and awards the requested rates.

**b. Hours Expended**

The undersigned has reviewed the billing records and finds that certain entries are not reasonable. Specifically, the undersigned discovered billing for administrative work, excessive billing, and duplicative billing.

**i. Administrative Work**

Billing at any rate for clerical and other administrative work is not permitted in the Vaccine Program. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (holding that tasks that are "primarily of a secretarial and clerical nature . . . should be considered as normal overhead office costs included with the attorneys' fees rates"). Clerical and administrative work includes tasks such as making travel arrangements, setting up meetings, and reviewing invoices. *See Mostovoy v. Sec'y of HHS*, No. 02-10V, 2016 U.S. Claims LEXIS 113, at *12 (Fed. Cl. Spec. Mstr. Feb. 4, 2016). Vaccine Program decisions have also held that filing is a clerical task. *Hoskins v. Sec'y of HHS*, No. 15-071V, 2017 U.S. Claims LEXIS 934, at *6-7 (Fed. Cl. Spec. Mstr. July 12, 2017) ("Almost all of the paralegal's time was spent on scanning, paginating, and filing records—clerical activities for which neither an attorney nor a paralegal should charge."); *Floyd v. Sec'y of HHS*, No. 13-556V, 2017 U.S. Claims LEXIS 300, at *13-14 (Fed. Cl. Spec. Mstr. Mar. 2, 2017) ("[S]ome of the tasks performed by paralegals were clerical/secretarial in nature. Examples include . . . filing documents through the CM/ECF system."); *Kerridge v. Sec'y of HHS*, No. 15-852V, 2017 U.S. Claims LEXIS 1108, at *6 (Fed. Cl. Spec. Mstr. July 28, 2017) (noting that a paralegal billed for "administrative tasks, including . . . filing exhibits" which are not compensated in the Vaccine Program).

Sixteen entries in Mr. Sadaka's billing records reflect billing for clerical work involving scheduling. *See* Mot. Ex. A, ECF No. 153-1.

In 2014, scheduling tasks were billed on September 15-16 and December 31. *See id.* at 16, 18. The scheduling is described as: "draft/revise [and] receive/review correspondences to [and/or] from opposing counsel [and/or] expert" regarding hearing dates." *Id.* In 2015, the following dates include hours billed for scheduling: two entries on March 13, two entries on March 18, April 2, April 6, April 10, April 20, and December 22. *See id.* at 19-20, 24. These entries also reflect correspondence with opposing counsel and the expert regarding entitlement hearing dates. *Id.* at 19-20. The December 22, 2015 entry reflects correspondence between Mr. Sadaka and the expert regarding the expert's unavailability for the scheduled hearing. *Id.* at 24. In 2016, scheduling tasks were billed twice on May 10, and once on July 18. *See id.* at 28, 29. The May 10 entries reflect communication between a paralegal and the client, opposing counsel, and expert regarding hearing availability. *Id.* at 28. The July 18 entry reflects communication with the client about the scheduled hearing dates. *Id.* at 29. In 2017, scheduling tasks were billed on May 26. *See id.* at 32. On that date, a paralegal billed for communication with the Court regarding a deadline. *Id.*

The undersigned finds that all of the entries detailing scheduling tasks will not be compensated, and therefore the sixteen scheduling entries described above will be deducted from the hours awarded. The 2014 entries entailed .70 hours of paralegal billing, totaling **$94.50**. The 2015 entries entailed .80 hours of paralegal billing and .70 of Mr. Sadaka's billing, totaling **$353.00**. The 2016 entries entailed .70 hours of paralegal billing, totaling **$98.00**. The 2017 entry entailed .10 hours of paralegal billing, totaling **$14.52**.

Sixty entries in the billing records also reflect, in part, billing for filing, described each time as "file and serve." *See* Mot. Ex. A, ECF No. 153-1. In 2011, the following dates reflect entries for filing: May 2, June 3, July 27, August 23, November 10, and November 23. *See id.* at 3-5. In 2012, the following dates reflect entries for filing: February 6, two entries on February 23, April 30, two entries on May 30, June 29, July 9, August 13, August 16, September 4, September 12, and two entries on September 18. *See id.* at 5-9. In 2013, the following dates billed for filing: April 22, two entries on June 28, August 30, September 30, October 7, and two entries on December 10. *See id.* at 11, 12. In 2014, the following dates reflect entries for filing: February 11, March 20, March 25, June 19, September 2, September 3, October 31, November 3, and December 4. *See id.* at 13-17. In 2015, the following dates reflect entries for filing: March 13, March 17, June 18, July 16, October 9, two entries on October 16, November 2, December 11, December 16, and December 30. *See id.* at 19-24. In 2016, the following dates reflect entries for filing: January 19, March 15, March 28, and May 10. *See id.* at 26-28. In 2017, the following dates reflect entries for filing: May 10, May 26, May 30, June 9, two entries on June 12, and November 29. *See id.* at 31-33, 37. Lastly, one January 30, 2018 billing entry reflects filing. *See id.* at 37.

The undersigned finds that filing will not be compensated. Therefore, for the sixty entries that include filing, the undersigned will reduce the time billed by .10 hours at the applicable paralegal rate.[7] Therefore, the undersigned will reduce the award as follows: 0.6 hours in 2011, a **$72.34** reduction; 1.4 hours in 2012, a **$175.27** reduction; 0.8 hours in 2013, a **$104.01** reduction; 0.90 hours in 2014, a **$121.50** reduction; 1.1 hours in 2015, a **$148.50** reduction; 0.4 hours in 2016,

[7] The entries often contain other tasks in addition to filing, and therefore the undersigned has estimated that the "file and serve" portion of each entry reasonably amounts to .10 hours.

a **$56.00** reduction; 0.7 hours in 2017, a **$101.62** reduction; and 0.10 hours in 2018, a **$15.06** reduction.

Thus, the total reduced for the administrative work of scheduling and filing is: **$72.34 for 2011, $175.27 for 2012, $104.01 for 2013, $216.00 for 2014, $501.50 for 2015, $154.00 for 2016, $116.14 for 2017, and $15.06 for 2018**.

### ii. Excessive Billing

The main purpose of awarding attorneys' fees and costs in the Program is to ensure that petitioners have the benefit of qualified attorneys. *See Sebelius v. Cloer*, 569 U.S. 369, 380 (2013); *Turner v. Sec'y of HHS*, No. 02-1437V, 2014 U.S. Claims LEXIS 235, at *23-24 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). An award of attorneys' fees is intended to reasonably compensate an attorney's time, and attorneys "should not include in their fee requests hours that are 'excessive, redundant, or otherwise unnecessary.'" *Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1521 (Fed. Cl. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Excessive and unreasonable billing includes billing for the performance of "relatively simple tasks . . . [like] reviewing standard order[s] filed in virtually all Vaccine Act cases." *Mooney v. Sec'y of HHS*, No. 05-266V, 2014 U.S. Claims LEXIS 1526, at *36 (Fed. Cl. Spec. Mstr. Dec. 29, 2014).

The undersigned finds that reviewing minute entries, notices of receipt, and informal communication notices are simple tasks. Therefore, the undersigned finds that billing even .10 hours for each such entry is excessive, and will reduce Petitioner's request for fees accordingly.

The billing records for 2014 include .10 paralegal hours billed on both February 27, 2014 and July 31, 2014 for reviewing status conference minute entries. Mot. Ex. A at 13, 16; ECF No. 153-1. They also include 0.10 paralegal hours billed for reviewing court correspondence that a compact disc was received on June 19, 2014. *Id.* at 15. Therefore, the undersigned will reduce Petitioner's request for fees by .30 paralegal hours in 2014, a total reduction of **$40.50**.

The billing records for 2015 include .10 paralegal hours for reviewing a status conference minute entry on February 12, 2015. *Id.* at 19. They also include .10 paralegal hours and .10 attorney hours for review of an informal communication notice on October 30, 2015.[8] *Id.* at 22. Therefore, the undersigned will reduce Petitioner's request for fees by .20 paralegal hours and .10 attorney hours for 2015, a total reduction of **$62.00**.

The billing records for 2016 include .10 attorney hours for reviewing a status conference minute entry on April 19, 2016. *Id.* at 27. They also include .10 paralegal hours for reviewing court correspondence that a compact disc was received on May 16, 2016. *Id.* at 28. Additionally, the 2016 billing records reflect 0.10 attorney hours on September 9, 2016 and .10 paralegal hours on November 30, 2016 for reviewing informal communications. *Id.* at 29. Therefore, the undersigned will reduce Petitioner's request for fees by .20 paralegal hours and .20 attorney hours for 2016, a total reduction of **$100.59**.

---

[8] The undersigned notes that the billing records also reflect review of an informal communication notice by both a paralegal and Mr. Sadaka on March 18, 2015. Mot. Ex. A at 19, ECF No. 135-1. However, those hours were already reduced because they involved scheduling.

The billing records for 2017 include .10 paralegal hours billed for reviewing an informal communication on January 24, 2017. *Id.* at 30. They also include .10 paralegal hours billed for reviewing status conference minute entries on March 14, 2017 and May 23, 2017. *Id.* at 30-31. Additionally, on both May 26, 2017 and June 22, 2017, the attorney and a paralegal billed .10 hours each for review of informal communications. *Id.* at 32, 35. Finally, on June 27, 2017 a paralegal logged .10 hours to review the hearing minute entry. *Id.* at 36. Therefore, the undersigned will reduce Petitioner's request for fees by .60 paralegal hours and .20 attorney hours for 2017, a total reduction of **$162.38**.

**iii. Duplicative Billing**

Compensation will not be awarded for duplicative billing entries. Duplicative billing includes multiple staff members and/or attorneys reviewing the same filings. *Turkupolis v. Sec'y of HHS*, No. 10-351V, 2015 U.S. Claims LEXIS 42, at *11, 13 (Fed. Cl. Spec. Mstr. Jan. 9, 2015) (reducing fees and noting a pattern of billing 0.10 attorney hours for review of all filings, regardless of the filing's length or complexity); *Z.H. v. Sec'y of HHS*, No. 16-123V, 2018 U.S. Claims LEXIS 248, at *7 (Fed. Cl. Spec. Mstr. Mar. 6, 2018) (reducing fees where "[m]ultiple attorneys reviewed the same orders and notifications and all billed time for doing so").

The undersigned finds that it is not reasonable for both an attorney and a paralegal to bill for reviewing each filing in the case. In this case, the billing records consistently reflect duplicate entries where Mr. Sadaka and a paralegal reviewed the same notices or orders.[9]

In 2011, there are nine entries by Mr. Sadaka and nine parallel entries by a paralegal where each received and/or reviewed notices or orders. The 2011 dates referenced are: March 4, March 7, April 8, May 3, June 13, July 26, August 24, November 10, and November 28. *See id.* at 2-5. On each date, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. *Id.*

In 2012, there are ten such entries. The 2012 dates referenced are: February 29, April 30, May 30, two entries on June 27 (for Respondent's status report and an Order), June 29, August 13, September 12, September 19, and November 5. *Id.* at 6-10. On each date except November 5, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. On November 5, the paralegal billed .10 hours and Mr. Sadaka billed .30 hours for reviewing the same filing.

In 2013, there are seven such entries. The 2013 dates referenced are: February 21, March 4, June 25, July 1, August 30, October 8, and December 11. *Id.* at 10-13. On each date, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. *Id.*

[9] These entries are described as receiving or reviewing: notices of assignment, initial orders, scheduling orders, notices granting motions for extensions of time, Respondent's status reports, orders requiring filing of medical reports, Respondent's Rule 4 Report, orders for Petitioner's status reports and supplemental expert reports, orders to strike, and statements of unavailability. *See* Mot. Ex. A, ECF No. 153-1.

In 2014, there are sixteen such entries. The 2014 dates referenced are: February 19, February 26, February 27, two entries on May 14 (for a motion and an order granting the motion), two entries on June 5 (for the notice of assignment and the order reassigning the case), June 18, July 24, July 25, August 4, September 3, September 4, September 23, November 4, and December 5. *Id.* at 13-17. On each date except July 24, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. On July 24, the paralegal billed .20 hours while Mr. Sadaka billed .10 hours.

In 2015, there are twenty-two such entries. The 2015 dates referenced are: January 20, January 29, February 12, March 16, three entries on April 10 (for Respondent's motion, an order granting that motion, and a scheduling order), April 20, May 18, June 19, October 2, October 13, October 30, December 1, December 2, December 7, two entries on December 11 (for Respondent's prehearing submissions and an order granting an extension), December 14, December 16, and two entries on December 30 (for a scheduling order and an order). *Id.* at 18-24. On most dates, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. *See id.* On April 20, the paralegal billed .10 hours, while Mr. Sadaka billed .30 hours. *Id.* at 20. On October 30, the paralegal billed .10 hours, while Mr. Sadaka billed .40 hours. *Id.* at 22. On December 7, the paralegal billed .40 hours, while Mr. Sadaka billed .50 hours. *Id.* at 23. On December 11, the paralegal billed .30 hours, while Mr. Sadaka billed 1.10 hours. *Id.* The undersigned notes that the billing records reflect additional duplicative billing entries on March 18 and October 30, but the hours in those entries were already reduced as excessive. *Id.* at 19, 22.

In 2016, there are seventeen such entries. The 2016 dates referenced are: January 7, January 8, January 15, February 29, March 1, March 16, March 22, April 4, April 21, June 20, July 15, September 20, September 21, two entries on October 21 (for Respondent's status report and an Order), and two entries on December 1 (for Respondent's status report and the Prehearing Order). *Id.* at 25-30. On most dates in 2016, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. *See id.* On March 22, the paralegal billed .10 hours, while Mr. Sadaka billed .90 hours. *Id.* at 27. On July 15, the paralegal billed .10 hours, while Mr. Sadaka billed .20 hours. *Id.* at 29.

In 2017, there are twenty-nine such entries. The 2017 dates referenced are: January 24, March 13, March 14, April 13, April 14, two entries on May 10 (for a status conference order and a scheduling order), two entries on May 16 (for a notice of assignment and an order reassigning the case), May 17, May 22, May 23, May 30, two entries on June 12 (for an order granting an extension and Respondent's prehearing submissions), June 13, June 21, June 22, June 23, three entries on June 26 (for a status conference order, a 15-week stipulation order, and a scheduling order), August 9, two entries on October 6 (for Respondent's 15-week status report and a scheduling order), October 26, October 27, November 21, and November 28. *Id.* at 30-37. The undersigned notes that there were two additional duplicative entries, on May 26, 2017 and June 22, 2017, but the hours in those entries have already been reduced because they were found to be excessive. *Id.* at 32, 35. On most dates in 2017, Mr. Sadaka and a paralegal each billed .10 hours for reviewing the same filings. *See id.* at 25-30. On May 22, the paralegal billed .30 hours, while Mr. Sadaka billed .90 hours. *Id.* at 31. On June 12 and June 23, the paralegal billed .10 hours, while Mr. Sadaka billed .20 hours. *Id.* at 34.

In 2018, there is one such entry. On January 30, 2018, the billing records reflect that a paralegal spent .20 hours reviewing client correspondence enclosing the Rule 9 statement, while Mr. Sadaka spent .10 reviewing the same. *Id.* at 37.

For each of the aforementioned entries, the undersigned reduces Mr. Sadaka's hours by the amount of hours billed by a paralegal for the same task. Where Mr. Sadaka's billing includes in part billing for the same task a paralegal billed, the undersigned affords Mr. Sadaka the benefit of the doubt and awards Petitioner the attorney rate for the remaining time spent on the other included tasks.[10] Where the paralegal spent more time than Mr. Sadaka for reviewing a filing, Mr. Sadaka's entry is reduced to zero.

Accordingly, Mr. Sadaka's hours are reduced as follows: 0.9 hours in 2011, a reduction of **$292.12**; 1.0 hours in 2012, a reduction of **$337.05**; 0.70 hours in 2013, a reduction of **$235.94**; 1.60 hours in 2014, a reduction of **$560.00**; 2.70 hours in 2015, a reduction of **$945.00**; 1.70 hours in 2016, a reduction of **$617.02**; 3.1 hours in 2017, a reduction of **$1166.78**; and 0.10 hours in 2018, a reduction of **$40.42**.

The undersigned finds that the remainder of the hours documented in the billing records are reasonable and will be awarded in full.

## II. Attorneys' Costs

The Vaccine Act also permits an award of attorneys' costs. 42 U.S.C. § 300aa-15(e). Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of HHS*, 27 Fed. Cl. 29, 34 (1992). Petitioner requests compensation for attorneys' costs in the amount of $47,188.71. The undersigned finds the following reductions are necessary.

First, the undersigned requested, by order filed June 18, 2018, "[r]eceipts for all requested 'Mailing' costs over $5.00." ECF No. 156. While Petitioner subsequently submitted receipts for most of the mailing costs, she did not provide documentation for a mailing expense of $46.36 listed in counsel's billing records as having been incurred on Thanksgiving Day, November 26, 2015. *See* Mot. Ex. A at 39, ECF No. 153-1; Pet'r Ex. 108, ECF No. 157-1. Without documentation, the undersigned cannot determine whether that requested cost is reasonable, and it will not be awarded. *See* Vaccine Guidelines, Section X, Ch. 2, Part C, available on the U.S. Court of Federal Claims website at: http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters. Therefore, Petitioner's request for costs will be reduced by **$46.36**.

Second, Petitioner requests compensation for her counsel's mileage and gas costs related to the entitlement hearing, specifically $269.74 for mileage and $116.35 for gas. However, reimbursement for mileage "takes into account the cost of gas and vehicle wear and tear." *Cabrera*

---

[10] Petitioner's counsel is cautioned that, in the future, entries which constitute block billing may be reduced in their entirety. The Vaccine Program's Guidelines clearly state that "[e]ach task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request." Guidelines for Practice, Section X, Chapter 3, Part B(1)(b).

*v. Sec'y of HHS*, No. 13-598V, 2017 U.S. Claims LEXIS 110, at *11-12 (Fed. Cl. Spec. Mstr. Jan. 23, 2017).[11] Therefore, the undersigned will only award the cost of mileage for her counsel's round trip between New Jersey and Washington, D.C. for the entitlement hearing. Accordingly, the undersigned will reduce Petitioner's request for attorneys' costs by **$116.35**.

Third, Petitioner requests compensation for her counsel's hotel stay related to the entitlement hearing, specifically $1,186.23 total for two nights at the Mayflower Hotel. Pet'r Ex. 108 at 1, ECF No. 157. While the undersigned finds that a two-night hotel stay was reasonable for counsel to attend the entitlement hearing, the documentation submitted in association with Mr. Sadaka's hotel room raises some concerns. *See* Mot. Ex. B at 17-20, ECF No. 153-2; Pet'r Ex. 108 at 1, ECF No. 157-1. The undersigned recognizes that Washington, D.C. is an expensive metropolitan city, and that the cost of hotel rooms in the city can fluctuate depending on the time of year and events happening in the area. However, the undersigned does not find that $469.00 per night and $567.00 per night were reasonable amounts for Petitioner's counsel to spend on his accommodations related to the entitlement hearing. In a 2016 decision, Chief Special Master Dorsey thoroughly discussed the numerous available options for hotel rooms "within a three-block radius of the Office of Special Masters." *See Salmins v. Sec'y of HHS*, No. 11-140V, 2016 U.S. Claims LEXIS 142, at *11-12 (Fed. Cl. Spec. Mstr. Feb. 10, 2016). She also noted varying rates for the hotels in the area, found that $516.06 for a one-night stay was excessive, and reduced the cost of counsel's hotel room to $300. In this case, it is unnecessary for the undersigned to search on the internet to determine whether a cheaper hotel room was available, because the billing records are proof enough. Mot. Ex. B at 21, ECF No. 153-2. The hotel room booked for Petitioner's expert, Dr. Shoenfeld, cost only $399.00 per night for the same nights as Mr. Sadaka's stay, for a total of $913.70 including taxes and fees. *Id.* at 21. While higher than the $300.00 per night previously awarded, the undersigned finds that the rate Dr. Shoenfeld paid was reasonable, while the rate paid by Mr. Sadaka was excessive. Mr. Sadaka's hotel costs will be reduced to that of his expert, a reduction of **$272.53**.

Finally, Petitioner requests $39,500 in fees paid to Petitioner's expert, Dr. Shoenfeld. Mot. Ex. A at 39-40, ECF No. 153-1; Mot. Ex. B at 11, 13, ECF No. 153-2. Petitioner must monitor expert fees, and it is Petitioner's counsel's duty to ensure the reasonableness of said expert fees. *See King v. Sec'y of HHS*, No. 03-584V 2010 U.S. Claims LEXIS 966, at *12 (Fed. Cl. Spec. Mstr. Dec. 13, 2010); *Simon v. Sec'y of HHS*, 05-941V, 2008 U.S. Claims LEXIS 67, at *6 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). The undersigned may use her experience and judgment to determine "the reasonableness of the number of hours expended by an expert under the circumstances in a particular case." *O'Neill v. Sec'y of HHS*, No. 08-243V, 2015 U.S. Claims LEXIS 620, at *49 (Fed. Cl. Spec. Mstr. Apr. 28, 2015).

In this case, inconsistencies between Mr. Sadaka's and Dr. Shoenfeld's billing records make a reduction in expert fee costs appropriate. On June 26, 2017, Mr. Sadaka recorded 4.00 hours for "Meeting with Dr. Shoenfeld." Mot. Ex. A at 35, ECF No. 153-1. On the same date, he also recorded 1.00 hours for an additional "Meeting with Dr. Shoenfeld." *Id.* at 36. On the date

[11] According to the Internal Revenue Service, "[t]axpayers always have the option of calculating the actual costs of using their vehicle *rather than* using the standard mileage rates." *See* I.R.S. News Release IR-2016-169 (Dec. 13, 2016) (emphasis added).

of the hearing,[12] Mr. Sadaka billed 6.00 hours for the following: "Appear for/attend hearing; conference with client and mother afterwards; meet with Dr. Shoenfeld." *Id.* Although the hours on the date of the hearing are block billed, the undersigned finds that Mr. Sadaka and Dr. Shoenfeld reasonably met for a total of 6.00 hours between June 26, 2017 and June 27, 2017. However, Dr. Shoenfeld's invoice reflects that he charged 7.00 hours for "Preparation for court appearance (with Mr. Sadaka)." Mot. Ex. B at 11, ECF No. 153-2. The undersigned reduces the amount for Dr. Shoenfeld's fees to reflect the same amount of hours Mr. Sadaka billed for the meetings on June 26-27, 2017, a reduction of 1 hour, or $500.00. Additionally, Dr. Shoenfeld billed 6.50 hours for attending the hearing, but the events of that day do not support such hours. The Court's transcript of the hearing begins at 9:34am and ends at 1:26pm, which includes a lunch break between 12:00pm and 1:24pm. *See* Transcript, ECF No. 145. Thus, the entire hearing, including an extended lunch, lasted only four hours. The undersigned finds that the additional hours billed by Dr. Shoenfeld on the day of the hearing are not reasonable, and Dr. Shoenfeld's hours are reduced by 2.50 hours from the day of the hearing, a reduction of $1,250.00. Therefore, the total deduction from the requested expert fees is **$1,750.00**.

The undersigned finds that the remainder of Petitioner's requested attorneys' costs are reasonable and will be awarded in full.

## III. Petitioner's Costs

Petitioners are also entitled to reimbursement for their litigation-related costs. *See Cunningham v. Sec'y of HHS*, No. 13-483V, 2017 U.S. Claims LEXIS 1209, at *12 (Fed. Cl. Spec. Mstr. Sept. 1, 2017). Like attorneys' fees and costs, Petitioner's costs must be reasonable and supported by documentation. In this case, Petitioner requested reimbursement for $724.56 "for expenses related to attending the entitlement hearing."[13] Pet'r Mot. at 2, ECF No. 153. The undersigned finds that certain requested expenses are not reasonable and that reductions are appropriate.

While the undersigned will provide reasonable reimbursement for Petitioner's meals while traveling for a hearing, "[t]he Vaccine Program does not reimburse for alcoholic beverages." *Schmidt v. Sec'y of HHS*, No. 11-620V, 2017 U.S. Claims LEXIS 39, at *8 (Fed. Cl. Spec. Mstr. Jan. 4, 2017) (deducting the costs of the beer and accompanying tax from Petitioner's meal); *Bhuiyan v. Sec'y of HHS*, No. 05-1269V, 2015 U.S. Claims LEXIS 548, at *23 (Fed. Cl. Spec. Mstr. Apr. 16, 2015). Additionally, the undersigned does not find that it is reasonable for the Program to reimburse the meals of additional diners, unless circumstances require that a petitioner be accompanied to the hearing by an aide or caregiver. *See Scoutto v. Sec'y of HHS*, No. 90-

[12] Although the billing records indicate that these hours also occurred on June 26, 2017, the surrounding entries reflect billing for the hearing itself, indicating that the work was actually performed on June 27, 2017.

[13] As previously discussed, Petitioner originally requested reimbursement for $781.76 in personal costs, but withdrew a request for $57.20 in alcoholic beverages in her Reply. Pet'r Reply at 1, ECF No. 155.

3576V, 1997 U.S. Claims LEXIS 195, at *12, *16 (Fed. Cl. Spec. Mstr. Sept. 5, 1997) (reimbursing the additional expenses for Petitioner's aide because Petitioner is a quadriplegic, thus the aide's attendance was necessary).

In this case, Petitioner filed her claim as a single, adult party.  Absent an explanation as to why Petitioner would have needed an additional party to attend the hearing with her, the undersigned will only award Petitioner's individual meal costs associated with the hearing, excluding alcohol.  Petitioner's receipts reflect that on June 27, 2017, two diners had a meal at Café du Parc, including two alcoholic beverages, an appetizer, and two entrees, for $144.40.  The undersigned will reduce the costs associated with the alcoholic beverages and tax, $24.20, as well as the second entrée with tax, $28.60, for a total reduction of **$52.80**.[14]

Additionally, Petitioner requested compensation for two tickets for a "DC The Lights! Tour."  Mot. Ex. C at 12, ECF No. 153-3.  The Vaccine Program does not compensate for travel expenditures unrelated to the entitlement hearing, and therefore the undersigned will reduce Petitioner's request for costs by an additional **$120.96**.

The undersigned finds that the remainder of Petitioner's requested costs are reasonable and will be awarded in full.

## IV.    Conclusion

The undersigned is troubled by many aspects of Petitioner's Motion in this case.  Petitioner's counsel is undeniably quite familiar with the Program, as he has "been the counsel of record for over 180 vaccine injury cases."  Pet'r Mot. at 6, ECF No. 153.  The inclusion of requests for Petitioner costs such as a post-hearing dinner for two and two alcoholic drinks, four pre-dinner alcoholic drinks, and two tickets for a sightseeing tour constitutes, at best, an unacceptable lack of attention to detail.  This is exacerbated by Petitioner's counsel assertion that he "review[ed] the file" after submitting the motion, but withdrew only the request for pre-dinner drinks.  *See* Pet'r Reply at 1, ECF No. 155.  It appears that counsel did not review the motion sufficiently to notice the request for additional drinks, an additional diner, and two sightseeing tour tickets.

Additionally, Petitioner requested reimbursement for counsel's costly meals, despite the fact that several of the meals were purchased days after the entitlement hearing concluded.  Such a request seems inconsistent with Petitioner's counsel's considerable familiarity with the Program and previously-awarded reasonable costs.  Moreover, failure to provide itemized receipts for counsel's meals raises a suspicion that counsel's itemized receipts may have reflected the same issues with additional diners and/or alcoholic beverages apparent in the request for Petitioner costs.  While many of the undersigned's concerns have been addressed by Petitioner's withdrawal of certain aspects of her request for costs, the undersigned cautions that an opportunity to file additional documentation may not be afforded for future motions for attorneys' fees and costs, particularly from counsel in this case.

---

[14] Although the receipt from Applebee's Restaurant on June 26, 2017 is itemized, it is unclear whether it reflects meals for more than one diner.  Mot. Ex. C at 1, ECF No. 153-3.  However, the undersigned finds that $23.91 is a reasonable amount and it will not be reduced.

Respondent's decision to not provide any objections or analysis of petitioners' motions for attorneys' fees and costs may have contributed to the laxity of review by Petitioner's counsel before submission of the motion in this case. Consistently approaching motions for attorneys' fees in this manner potentially promotes a culture in which petitioners are aware that the opposing party is no longer monitoring their submissions for attorneys' fees and costs. While the undersigned has reviewed Petitioner's motion for reasonableness and has *sua sponte* reduced the amount awarded in fees and costs, such action should not be seen as justifying Respondent's voluntary relinquishment of his right to challenge items in the fee application.

Motions from inattentive petitioners' counsel and a lack of analysis from Respondent will continue to cause delays in the resolution of attorneys' fees. In a recent Court of Federal Claims decision, the court awarded additional attorneys' fees for preparation of a motion to reconsider a decision on attorneys' fees and costs, where a special master had *sua sponte* reduced the amount awarded. *Kukreja v. Sec'y of HHS*, 136 Fed. Cl. 431, 439 (2017). As noted by another Special Master, that decision "effectively transforms the special master's initial decision into a brief from the Secretary [of HHS] to which the petitioners may respond through a motion for reconsideration." *Phillips v. Sec'y of HHS*, 2018 U.S. Claims LEXIS 158, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 8, 2018). Notably, "[t]he time a special master spends poring over fee applications is time that he or she cannot spend deciding requests for compensation by injured petitioners." *Dominguez v. Sec'y of HHS*, 136 Fed. Cl. 779, 786 (2018).

Based on the undersigned's analysis of Petitioner's motion and supportive filings, the undersigned finds that Petitioner is entitled to the following award of reasonable attorneys' fees and costs, as well as the following Petitioner's costs:

| **Attorneys' Fees Requested** | **$66,332.74** |
|---|---|
| (Reduction for 2011 Admin. Work) | - $72.34 |
| (Reduction for 2011 Duplicative Billing) | - $292.12 |
| (Reduction for 2012 Admin. Work) | - $175.27 |
| (Reduction for 2012 Duplicative Billing) | - $337.05 |
| (Reduction for 2013 Admin. Work) | - $104.01 |
| (Reduction for 2013 Duplicative Billing) | - $235.94 |
| (Reduction for 2014 Admin. Work) | - $216.00 |
| (Reduction for 2014 Excessive Billing) | - $40.50 |
| (Reduction for 2014 Duplicative Billing) | - $560.00 |
| (Reduction for 2015 Admin. Work) | - $501.50 |
| (Reduction for 2015 Excessive Billing) | - $62.00 |
| (Reduction for 2015 Duplicative Billing) | - $945.00 |
| (Reduction for 2016 Admin. Work) | - $154.00 |
| (Reduction for 2016 Excessive Billing) | - $100.59 |
| (Reduction for 2016 Duplicative Billing) | - $617.02 |
| (Reduction for 2017 Admin. Work) | - $116.14 |
| (Reduction for 2017 Excessive Billing) | - $162.38 |
| (Reduction for 2017 Duplicative Billing) | - $1,166.78 |
| (Reduction for 2018 Admin. Work) | - $15.06 |

| | |
|---|---|
| (Reduction for 2018 Duplicative Billing) | - $40.42 |
| **Total Attorneys' Fees Awarded** | **$60,418.62** |
| **Attorneys' Costs Requested** | **$47,188.71** |
| (Undocumented Cost Reduction) | - $46.36 |
| (Gas Reduction) | - $116.35 |
| (Hotel Reduction) | - $272.53 |
| (Dr. Shoenfeld's Hours Expended Reduction) | - $1,750.00 |
| **Total Attorneys' Costs Awarded** | **$45,003.47** |
| **Total Attorneys' Fees and Costs Awarded** | **$105,422.09** |

| | |
|---|---|
| **Petitioner's Costs Requested** | **$724.56** |
| (Reduction for Alcoholic Beverages and Additional Diner) | - $52.80 |
| (Reduction for Sightseeing Tour) | - $120.96 |
| **Total Petitioner's Costs Awarded** | **$550.80** |

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs, other than those reductions delineated above, is reasonable. Accordingly, the undersigned hereby awards a total of **$105,972.89** as follows:

- **The total of $105,422.09, in the form of a check made payable jointly to Petitioner and Petitioner's counsel, Mark Theodore Sadaka, of Mark T. Sadaka, LLC, for attorneys' fees and costs;**[15] **and**

- **The total of $550.80, in the form of a check made payable to Petitioner, for Petitioner's costs.**

[15] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of HHS*, 924 F.2d 1029 (Fed. Cir. 1991).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[16]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

[16] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).